NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WAYNE CONVALESCENT CENTER,
INC., Respondent.

No. 72–1081.

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 1972.

Bernard Gottfried, N. L. R. B., Washington, D. C., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Jerome H. Brooks, Director Region 7, N. L. R. B., Detroit, Mich., on brief, for petitioner.

Donald G. Schiff, Southfield, Mich., for appellee.

Before WEICK, EDWARDS and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order directing the respondent, the Wayne Convalescent Center, Inc., to cease and desist from refusing in violation of the Act[1] to bargain collectively with the union.[2] Specifically the Board found that the respondent violated the Act by refusing as a successor employer to bargain with a union which had earlier been certified as the collective bargaining representative for the nursing home employees.

On July 10, 1969, the union was certified as the exclusive bargaining representative for certain employees[3] of the Clark Convalescent Home of Wayne, Michigan. At the time of certification the unit consisted of approximately eighteen employees, ten of which voted for the union in the election. Following certification bargaining ensued between Clark, the predecessor employer, and the union which culminated in an agreement in March, 1970. The agreement was subsequently ratified by the employees. The contract was not prepared for execution until May 21, 1970. On May 8, 1970 Leon Kiff, holder of a mortgage on the Clark premises, foreclosed on Clark which had been in financial difficulties for at least the preced-

---

1. All statutory references are to the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 141 et seq.

2. Nursing & Convalescent Home Employees, Division of Local 79, Service Employees International Union, AFL–CIO.

3. The bargaining unit consisted of: All nurses aids, orderlies, dietary employees, kitchen employees, and laundry employees employed by the employer at its nursing home located at 34330 Van Born Road, Wayne, Michigan, but excluding all licensed practical nurses, office clerical employees, professional and technical employees, guards and supervisors as defined by the Act, and all other employees.

ing year. Kiff formed the Wayne Convalescent Center, Inc., and assumed operation of the nursing home. The only *significant change by the new owners* was the replacement of some supervisory personnel. Otherwise the operations of the nursing home with substantially the same personnel and patients continued uninterrupted. At the time of assumption of control Wayne had no knowledge of the union's status. Sometime during the last of June, the respondent unilaterally altered vacation pay, sick pay, and overtime rates. Also the respondent unilaterally conferred wage increases on some of its employees. On July 15, 1970, the union sent a formal demand for recognition and called upon Wayne to execute the collective bargaining agreement negotiated with Clark. These facts are undisputed. There was, however, considerable controversy concerning when Wayne actually acquired knowledge of the union's status as employee representative.

Sometime during June, but before the respondent unilaterally altered the conditions of employment, Clark's attorney sent several copies of the negotiated contract to the Wayne Convalescent Center. One witness testified that Mr. Kiff, the home's new owner, was aware of this contract at that time, and had asked her to read it. The trial examiner specifically relied upon this testimony to find that Wayne had knowledge of the existence of the union before making the changes.

During this period there appeared to be growing dissatisfaction among the employees concerning the union as their bargaining representative. Apparently a petition for a "revote" was circulated. There is no testimony concerning the number of employees who signed this petition. The union steward testified that she mailed the petition to the regional office of the N.L.R.B. on August 14, 1970. This petition was subsequently lost by the regional office.

We must uphold the findings of the Board if they are supported by substantial evidence in the record considered as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951); 29 U.S.C. § 160(e).

## I

First we consider whether the respondent is a successor employer. In NLRB v. Burns International Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), the Supreme Court stated:

It has been consistently held that a mere change of employers or of ownership in the employing industry is not such an 'unusual circumstance' as to affect the force of the Board's certification within the normal operative period if a majority of employees after the change of ownership or management were employed by the preceding employer. 406 U.S. at 279, 92 S. Ct. at 1577.

Recently this court noted:

[W]e must look to all the circumstances accompanying the transfer to determine whether the *nature of the employing industry has undergone such a basic change* that the collective bargaining unit, as it was under the previous employer, is no longer appropriate.

NLRB v. Interstate 65 Corporation, 453 F.2d 269, 272 (6th Cir. 1971); *See* NLRB v. Downtown Bakery Corporation, 330 F.2d 921 (6th Cir. 1964); NLRB v. McFarland, 306 F.2d 219 (10th Cir. 1962).

Although the absence of hiring of substantially all of the predecessor's employees may not show the absence of successorship, Monroe Sander Corp. v. Livingston, 377 F.2d 6 (2nd Cir. 1967), the hiring of a large portion of the predecessor's employees is persuasive in finding a successor status. William J. Burns International Detective Agency, Inc. v. NLRB, 441 F.2d 911, 915 (2nd Cir. 1971). "Moreover, retention of some 80% of [predecessor's] employees is a most important circumstance in determining respondent's successor status." NLRB v. Interstate 65 Corporation, *supra*, 453 F.2d at 273. Furthermore,

the Supreme Court laid great stress on this single factor to find successor status in John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

█ In the instant case Wayne did in fact retain substantially all of the predecessor's employees, changing only certain supervisory personnel. In this light, it is clear that the Board's finding of successor status for Wayne is supported by the controlling law and by substantial evidence.[4]

█ As a successor employer under these circumstances, it is also clear that Wayne is under a duty to bargain with the employees' representatives. In NLRB v. Burns International Security Services, Inc., *supra,* the Supreme Court held:

> But where the bargaining unit remains unchanged and a majority of the employees hired by the new employer are represented by a recently certified bargaining agent there is little basis for faulting the Board's implementation of the express mandates of § 8(a)(5) and § 9(a) by ordering the employer to bargain with the incumbent union. 406 U.S. at 281, 92 S. Ct. at 1579. *See* NLRB v. Interstate 65 Corp., *supra;* S. S. Kresge Company v. NLRB, 416 F.2d 1225, 1234 (6th Cir. 1969).

## II

█ While it is clear that Wayne was under a duty to bargain with the union as the employees' representative, it does not follow that the unilateral changes in conditions of employment that Wayne made sometime in June, 1970 were violations of such duty. In NLRB v. Burns International Security Services, Inc., *supra,* the Supreme Court held that a successor could establish the initial basis on which it hired the predecessor's employees without consulting the union representatives and without committing an unfair labor practice. The Court noted that it would be difficult to understand how a successor could have "changed unilaterally any pre-existing term or condition of employment without bargaining when it had no previous relationship whatsoever to the bargaining unit. . . ." 406 U.S. at 294, 92 S.Ct. at 1585. The successor was free to establish its own terms of employment initially without consulting the union even though these terms were different from the terms previously extended or agreed upon by bargaining with the predecessor.[5]

█ In our opinion the instant case is substantially similar to the situation presented in *Burns.*[6] The changes in

4. Mr. Justice Rehnquist, dissenting in *Burns,* expressed dissatisfaction with the test currently enunciated for determining successor status. He believes that the successorship should provide only "the same general protection against transfer of assets by an entity against which they [the employees] have a claim as is accorded by other legal doctrines to non labor-related claimants against the same entity." 406 U.S. at 305, 92 S.Ct. at 1591. While we express no opinion on the relative merits of this principle, we note that even under this test, Wayne should be regarded as a successor to Clark. Wayne acquired through foreclosure and negotiation substantially all of Clark's assets and retained nearly all of Clark's employees. In this situation Wayne should be obligated to assume Clark's duties to bargain collectively with the union.

5. A successor employer is not bound by the terms of a collective bargaining agreement in force between the predecessor and the union. *See* NLRB v. Burns International Security Services, *supra.*

6. In *Burns,* Mr. Justice White stated in the majority opinion: "[T]here will be instances in which it is perfectly clear that the new employer plans to retain all of the employees in the unit and in which it will be appropriate to have him initially consult with the employees' bargaining representative before he fixes terms." 294 U.S. at 406, 92 S.Ct. at 1586. This is not the case here. It was not "perfectly clear" at the time of the unilateral changes in conditions of employment that the employer was going to retain all of the predecessor's employees. There was substantial testimony in the

conditions of employment made by Wayne were initiated only one month after acquiring the nursing home. Even though the trial examiner found that Wayne's new owners had knowledge of the existence of some relationship between its employees and the union, the changes, we believe, were merely the initial terms of employment established by Wayne. As the Court noted in *Burns*:

A potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force, work location, task assignment, and the nature of supervision. 406 U.S. at 287, 92 S.Ct. at 1582.

The successor employer must be allowed to be free to establish its initial terms of employment of the predecessor's employees. To hold otherwise would make necessary changes in the conditions of employment nearly impossible without lengthy bargaining, and further inhibit a potential successor's desire to acquire an unsuccessful business. The Board therefore cannot rely on the unilateral changes in conditions of employment made by Wayne to find a refusal to bargain, and a violation of the Act.

### III

On July 15, 1970 the union sent to Wayne a formal demand for recognition and a demand to execute the contract previously negotiated with Clark.[7] This demand came five days after the expiration of the certification year. The company's defense to the charge of refusal to recognize the union is that it had a good faith doubt concerning the union's majority status.

Where the employer remains the same, Board certification of the union as bargaining representative carries almost a conclusive presumption that the union maintains its majority status for at least one year. After the end of the certification year the union's majority status becomes a rebuttable presumption.[8] *See* Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); Terrell Machine Co. v. NLRB, 427 F.2d 1088 (4th Cir. 1970); Bally Case and Cooler, Inc. v. NLRB, 416 F.2d 902 (6th Cir. 1969); NLRB v. Universal Gear Service Corp., 394 F.2d 396 (6th Cir. 1968). This presumption will bind a successor unless it demonstrates that the union no longer represents a majority of employees on the date of refusal to bargain, or that the refusal to bargain was grounded on a good faith doubt of the union's majority status. *See* Terrell Machine Co. v. NLRB, *supra*, 427 F.2d at 1090; NLRB v. Downtown Bakery Corp., *supra*, 330 F.2d at 925; Celanese Corporation of America, 95 NLRB 664 (1951). The successor cannot of course upset what it should have accepted as a union majority by committing unfair labor practices designed to destroy the majority. NLRB v. Burns International Security Services, *supra*, 406 U.S. at 1571, 92 S.Ct. 1571. It is not enough for the successor to base its doubts on nothing more than isolated reports of dissatisfaction among the employees with the union. *Terrell Machine Co. v. NLRB, supra.*

The Board found that none of the circumstances that would justify Wayne in refusing to bargain is present here. While there is some testimony in the record that the employees were dis-

---

record that it was unclear whether the new owners were going to continue the nursing home facility or convert the premises to a "bed and board" facility. If this occurred Wayne would need to retain but a few of Clark's employees.

7. While the formal demand sent by the union to Wayne on July 15, 1970 did not contain a demand to bargain collectively, such a demand can reasonably be inferred. It is well established that a demand to

bargain collectively need assume no particular form. *See, e. g.,* NLRB v. Barney's Supercenter, Inc., 296 F.2d 91 (3rd Cir. 1961).

8. The reasons for the certification-year rule are well known and need not be repeated here. *See* Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); NLRB v. Universal Gear Service Corp., 394 F.2d 396 (6th Cir. 1968).

satisfied with the union, the trial examiner found that "the generality of such testimony precludes the making of a specific finding." We agree with the Board's conclusion that there is insufficient evidence to support the company's assertion that it had a reasonable doubt as to the union's majority status on July 15, 1970. The company's refusal to bargain after the formal demand by the union constitutes an unfair labor practice and a violation of § 8(a)(5) of the Act.

The Board's order will therefore be enforced to the extent that it may be construed to require Wayne to recognize and bargain with the union as the representative of its employees under the Act.[9]

9. The unilateral changes which we have held not to be violative of the Act shall remain in effect but shall be subject to future bargaining.