**SPITZER AKRON, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75-2012.

United States Court of Appeals, Sixth Circuit.

Argued March 30, 1976.

Decided June 22, 1976.

**842**

M. Alfred Roemisch, Donald N. Jaffe, Roemisch & Wright, Cleveland, Ohio, for petitioner.

Elliott Moore, Deputy Associate Counsel, James M. Hirschhorn, N. L. R. B., Washington, D. C., for respondent.

Before PHILLIPS, Chief Judge, and McCREE and LIVELY, Circuit Judges.

HARRY PHILLIPS, Chief Judge.

This case is before the court on a petition to review and set aside a Second Supplemental Decision of the National Labor Relations Board of July 9, 1975, reported at 219 N.L.R.B. No. 2 and the cross application of the Board for enforcement. The Board reaffirmed its conclusion that Spitzer Akron, Inc. (the Company) violated § 8(a)(5) and (1) of the National Labor Relations Act by unilaterally changing wages and working conditions when it took control of its predecessor's business on September 4, 1970, and by refusing to recognize, meet and bargain with the incumbent union on September 21, 1970. The Board also reaffirmed its conclusion that the employees were unfair labor strikers who were entitled to reinstatement after their unconditional request to return on March 26, 1971. We enforce the order of the Board.

On January 26, 1972, the Board issued its original decision and order, 195 N.L.R.B. No. 24, finding the Company violated § 8(a)(5) and (1) of the Act by refusing to bargain with the union as the exclusive bargaining representative of all employees in the appropriate unit, and ordering it to bargain with the union. The Board's order required the Company, upon request, to cancel any unilateral changes of benefits or working conditions which it made. The order further required the Company to offer reinstatement to those strikers to whom it had not made an unconditional offer of reinstatement, and to make whole all employees who went on strike for any loss of earnings they might have suffered from the time of their unconditional offer to return to work until the date the Company offered their reinstatement.

In light of the Supreme Court's then recent decision in *NLRB v. Burns International Security Services Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) and *NLRB v. Wayne Convalescent Center,* 465 F.2d 1039 (6th Cir. 1972), this Court granted enforcement of the Board's order, 470 F.2d 1000, 1001 (6 Cir. 1972). Subsequently, upon application of the petitioner herein, the Supreme Court granted certiorari, vacated the judgment and remanded the case to this Court with instructions to remand the case to the Board for such further proceedings as may be appropriate in light of *Burns; FTC v. Sperry & Hutchinson,* 405 U.S. 233, 245–250, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972); *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Bachrodt Chevrolet Co. v. NLRB,* 411 U.S. 912, 93 S.Ct. 1547, 36 L.Ed.2d 304 (1973); and, *Denham v. NLRB,* 411 U.S. 945, 93 S.Ct. 1925, 36 L.Ed.2d 407 (1973). On August 15, 1973, this Court remanded the case to the Board. On remand, the Board re-examined its original decision in light of *Burns* and reaffirmed its conclusion that the Company violated Sections 8(a)(5) and (1) of the Act. This Supplemental Decision and Order, issued on January 25, 1974, is reported at 208 N.L.R.B. No. 80.

An appeal was taken by the Company from the Supplemental Order to this Court.

We granted the petition for review, and remanded the case to the Board on the basis that petitioner had not been provided an opportunity to present its views on the cases cited in the Supreme Court's order and their applicability to the facts of this case, 504 F.2d 28, 29 (6 Cir. 1974). The Board, having complied with our order of notice and opportunity to be heard, issued its Second Supplemental Decision reaffirming its conclusions. That decision is the basis of the present petition to review.

## I.

Reference is made to the decisions of the Board cited above for a detailed statement of the facts. For purposes of this appeal the facts are summarized as follows:

In 1964, Local 762 of the Machinists' Union entered into a multiemployer agreement with certain automobile dealers including Arnett Chrysler-Plymouth, a predecessor of East Town Chrysler-Plymouth (East Town). The collective-bargaining agreement was to expire in 1967 but was extended to August 31, 1970. East Town was not signatory to the contract of September 1964, nor its amendments; however, on August 27, 1968, the Union and East Town entered into a separate agreement which also expired on August 31, 1970.

In April 1970, representatives of Spitzer Management began negotiating for the purchase of certain assets of East Town, and these negotiations were concluded on September 4, 1970, five days after the expiration of the bargaining agreement. At an employees' meeting on September 4, 1970, shortly after the Company had consummated the purchase of assets from East Town, the employees were informed that wage scales and benefits would be greater than the rates paid under the expired contract. Such changes were made without consulting with the incumbent union.

The work force was hired prior to the announcement of the changes in wages and benefits; moreover such changes had not been part of the initial terms of rehiring. Further, when Del Spitzer visited East Town early in August 1970, in connection with family plans for buying the business, he told mechanic John Hall that the Spitzers planned to buy East Town, and would need good mechanics. When Hall suggested that he keep all the East Town mechanics, Spitzer replied that he had checked on them, found they were good men, and "[wanted] every man to stay on the job, and will carry on as usual".

■ The Board reaffirmed in its Second Supplemental Decision that the Company was conducting the business in essentially the same form and scope as it was before the transfer of ownership (with the exception of the auto body repair and paint shop) using 10 of the 11 men of the East Town work force. Accordingly, under the teaching of *Burns,* the Company had a bargaining obligation as a successor to East Town. This obligation was not met when the Union demanded recognition on September 21, and the Company refused to recognize and bargain with the Union. The Board also found that when the Company took over the business on September 4 it had hired its "full complement of employees", which consisted of substantially all the men who had worked for East Town; therefore, the Company had a duty to bargain with the Union on September 4 before any changes were made in the conditions of employment. Moreover, the Board found that the facts of the instant case are sufficient to establish a duty to bargain, under the *Burns* doctrine, which existed prior to the formal rehiring of employees. It was "perfectly clear" in early August that a majority of the former employees would be rehired.

## II.

It appears that the Supreme Court in vacating our original enforcement order was concerned with the fact that our review of the Board's decision was not limited to the grounds upon which the Board purported to act. *See Sperry & Hutchinson,* 405 U.S. at 249, 92 S.Ct. 898; *Chenery,* 318 U.S. at 87, 94, 63 S.Ct. 454. Our decision, on the unilateral change question, relied in part on a concept propounded in language

in *Burns* which the Board had not considered previously since that agency's order predated *Burns.*[1]

We have reviewed the record as a whole and find there is substantial evidence to support the Board's finding that the Company was a successor employer and therefore obligated to recognize and bargain with the Union on September 21, 1970. *See Burns,* 406 U.S. at 280–281, 92 S.Ct. 1571. *Wayne Convalescent,* 465 F.2d at 1041–42. Further, there is substantial evidence to support the Board's decision that the Company did not have a good-faith doubt of the Union's majority status.

■ Although we agree with the Board that the Company's unilateral changes in conditions of employment on September 4 constituted an unfair labor practice under the teachings of *Burns,* we believe the *Burns'* doctrine on this point requires further explanation. On the issue of unilateral changes, the language of *Burns* which has caused confusion is as follows:

> Although Burns had an obligation to bargain with the union concerning wages and other conditions of employment when the union requested it to do so, this case is not like a § 8(a)(5) violation where an employer unilaterally changes a condition of employment without consulting a bargaining representative. It is difficult to understand how Burns could be said to have *changed* unilaterally any pre-existing term or condition of employment without bargaining when it had no previous relationship whatsoever to the bargaining unit and, prior to July 1, no outstanding terms and conditions of employment from which a change could be inferred. The terms on which Burns hired employees for service after July 1 may have differed from the terms extended by Wackenhut and required by the collec-

tive-bargaining contract, but it does not follow that Burns changed *its* terms and conditions of employment when it specified the initial basis on which employees were hired on July 1.

> Although a successor employer is ordinarily free to set initial terms on which it will hire the employees of a predecessor, there will be instances in which it is perfectly clear that the new employer plans to retain all of the employees in the unit and in which it will be appropriate to have him initially consult with the employees' bargaining representative before he fixes terms. In other situations, however, it may not be clear until the successor employer has hired his full complement of employees that he has a duty to bargain with a union, since it will not be evident until then that the bargaining representative represents a majority of the employees in the unit as required by § 9(a) of the Act, 29 U.S.C. § 159(a). 406 U.S. at 294–95, 92 S.Ct. at 1585.

We construe *Burns* as relating to the timing of the changes—whether they predate or postdate the commencement of the duty to bargain. As soon as the duty to bargain arises, the successor company cannot institute changes without consulting with the union. As the Seventh Circuit held in *Bachrodt* :

> Once the duty to bargain is triggered, a successor employer's responsibilities are akin to those of an ordinary employer prior to the negotiation of a formal labor contract but after a bargaining representative has been selected when he has the duty to bargain and, the corollary duty, not to institute changes without consulting the union. 468 F.2d at 969.

Under *Burns,* the successor employer can set the initial terms upon which rehiring is conditional provided that takes place before

---

1. The Supreme Court also vacated and remanded *NLRB v. Bachrodt,* 468 F.2d 963 (7th Cir. 1972), and *NLRB v. Denham,* 469 F.2d 239 (9th Cir. 1972), on identical grounds. 411 U.S. 912, 93 S.Ct. 1547, 36 L.Ed.2d 304 (1973); 411 U.S. 945, 93 S.Ct. 1925, 36 L.Ed.2d 407 (1973). Like the instant case, *Bachrodt* and *Denham* had relied on *Burns* in upholding the unilateral

change portion of the Board's order. *See* 468 F.2d at 969; 469 F.2d at 246–47. *Bachrodt* has been reaffirmed by the Board, 205 N.L.R.B. No. 784 (1973), and subsequently enforced by the Seventh Circuit, 515 F.2d 512 (1975) (unpublished order), *cert. denied,* 423 U.S. 927, 96 S.Ct. 274, 46 L.Ed.2d 255 (1975).

the duty to bargain arises. Generally, an otherwise successor can set the initial terms unilaterally without violating the Act since prior to the rehiring of his predecessor's employees, which constitute the majority of his work force in an appropriate unit, there is no duty to bargain. *See* Nash, *Successorship After Burns,* 7 Ga.L.Rev. 664, 671 (1973); Pate, *The Impact of Burns,* 7 Ga.L. Rev. 687, 693–694 (1973) [hereinafter cited as Pate]; Note, *The Bargaining Obligations of Successor Employers,* 88 Harv.L.Rev. 759, 778 (1975). The only instance in which the duty to bargain may precede the formal rehiring of employees is where "it is perfectly clear" the otherwise successor plans to retain a sufficient number of his predecessor's employees so that the union's majority status will continue. *See* Pate, *supra* at 694; Note, *Contract Rights and The Successor Employer: The Impact of Burns Security,* 71 Mich.L.Rev. 571, 580 (1973).

In *Burns,* the duty to bargain did not mature until late June, at a time when the successor had hired the requisite complement of his predecessor's employees. The Court, however, rejected the union's challenge to changes in working conditions unilaterally instituted by Burns in July since they had been incorporated in the initial employment contracts in early June, and thus necessarily predated the duty to bargain. Accordingly, these changes were merely initial terms set by the successor.

In the present case, when the changes were instituted by the Company on September 4, there already existed a duty to bargain with the incumbent union. Not only was the Company's operational structure and practice the same as it was before the transfer of ownership, but the Company had hired, prior to instituting the changes, the employees of its predecessor, which constituted the majority of its work force. The *Burns* court has approved these factors. In *Burns* the lower court relied on these elements in determining a successor status:

"All of the important factors which the Board has used and the courts have approved are present in the instant case:

'continuation of the same types of product lines, departmental organization, employee identity and job functions.' . . Both Burns and Wackenhut are nationwide organizations; both perform the identical services at the same facility; although Burns used its own supervisors, their functions and responsibilities were similar to those performed by their predecessors; and finally, and perhaps most significantly, Burns commenced performance of the contract with 27 former Wackenhut employees out of its total complement of 42." 441 F.2d 911, 915 (2 Cir. 1971) (citation omitted). Although the labor policies of the two companies differed somewhat, the Board's determination that the bargaining unit remained appropriate after the changeover meant that Burns would face essentially the same labor relations environment as Wackenhut: it would confront the same union representing most of the same employees in the same unit. 406 U.S. at 280, n. 4, 92 S.Ct. at 1578.

Assuming *arguendo,* that the formal rehiring took place after September 4, it appears, nevertheless, that a duty to bargain existed when the unilateral changes were instituted. The record establishes that it was "perfectly clear" in early August that the Company intended to rehire a sufficient number of employees to maintain the Union's majority status. Del Spitzer informed the employees that he "[wanted] every man to stay on the job, and would carry on as usual". Consequently, there is sufficient evidence to support a duty to bargain which preceded the formal rehiring of the East Town employees. Moreover, there is nothing to indicate that the employees were aware of the proposed changes in early August; accordingly, these changes can not be considered as initial terms of rehiring under *Burns. See Bachrodt,* 468 F.2d at 969.

The Second Circuit, relying on the Board's decision in *Spruce Up Corp.,* 209 N.L.R.B. No. 19 (1974), has considered the "perfectly clear" exception where the initial

terms were announced prior to or simultaneously with the invitation to the predecessor's employees. *Brotherhood of Railway v. REA Express Inc.,* 523 F.2d 164, 171 (2 Cir. 1975). The court limited the exception to where the:

> [N]ew employer has either actively or, by tacit inference, misled employees into believing they would all be retained without change in their wages, hours, or conditions of employment, or at least to circumstances where the new employer, unlike the Respondent here, has failed to clearly announce its intent to establish a new set of conditions prior to inviting former employees to accept employment.

Without commenting on the acceptance of this limitation by this court, we believe the facts in the instant case are sufficient, nevertheless, to establish that the employees were misled by "tacit inference" into believing they would be retained without change in the conditions of employment. Here, the employees were told the Company would "carry on as usual."

Our reasoning in the instant case is consistent with our decision in *NLRB v. Wayne Convalescent Center Inc., supra.* Although the changes instituted by Wayne occurred one month after acquiring the nursing home, the duty to bargain did not arise until after the changes were instituted—formal rehiring occurred after the changes were made. Moreover, it was not "perfectly clear" that Wayne planned to retain a sufficient number of employees to continue the union's majority status. At the time of the changes it was unclear whether the new owners were planning to continue the nursing home facility or convert the premises to a "bed and board facility". Consequently, the changes in conditions of employment were merely initial terms of employment. 465 F.2d at 1042, n. 6.

We further conclude that all other parts of the decision of the Board are supported by substantial evidence on the record considered as a whole.

Accordingly, the decision of the Board is enforced.