RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THE OHIO EDISON COMPANY; FIRSTENERGY
GENERATION CORP;

        *Petitioners/Cross-Respondents*,

    *v.*

NATIONAL LABOR RELATIONS BOARD,

        *Respondent/Cross-Petitioner*.

Nos. 15-1783/1929

---

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board.
Nos. 06-CA-092312; 08-CA-099595.

Argued: April 28, 2016

Decided and Filed: February 10, 2017

BOGGS and KETHLEDGE, Circuit Judges; STAFFORD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Nick A. Nykulak, ROSS, BRITTAIN & SCHONBERG, CO., L.P.A., Cleveland, Ohio, for Petitioners/Cross-Respondents. Benjamin M. Shultz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Barbara Sheehy, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner. **ON BRIEF:** Nick A. Nykulak, ROSS, BRITTAIN & SCHONBERG, CO., L.P.A., Cleveland, Ohio, for Petitioners/Cross-Respondents. Benjamin M. Shultz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Linda Dreeben, Kira Dellinger Vol, Marni von Wilpert, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

---

**OPINION**

---

KETHLEDGE, Circuit Judge.   The question presented in this case is whether a union representative's generalized complaint about various reductions in employee benefits—including significant cuts in the employer's 401(k) matching payments and in retiree life-insurance benefits—reflected a request on the union's part to bargain specifically about a change to an employee-recognition program that had never, over the course of four decades, been the subject of bargaining between the union and the employer.   The monetary effect of that change amounted to less than four dollars per union member per year.   A divided panel of the National Labor Relations Board construed the union representative's generalized complaint as a request to bargain about the employee-recognition program.   That finding is not supported by substantial evidence, and thus we deny the Board's application for enforcement of its order.

FirstEnergy established an employee-recognition program in 1973.   At first the company gave tie tacks or charm bracelets to employees after their first and fifth years of service.   In later years, the company eliminated the first-year gift and allowed eligible employees to choose items (such as alarm clocks and fishing rods) from a catalog that an outside vendor prepared for the purpose.   By 2012 the value of the five-year awards was $35, which increased to $69.50 for the ten-year awards and $75 for the fifteen.   The value of the awards thus amounted to about five to seven dollars per year of service.   Perhaps unsurprisingly, then, in the 39 years covered by the record here, the company and the various unions representing its employees have never bargained about the recognition program or mentioned the program in a collective-bargaining agreement.

By September 2012, FirstEnergy's revenue and stock price had dropped enough to reduce its market capitalization by $1.3 billion.   As a result, FirstEnergy implemented a range of cost-cutting measures, several of which affected employees.   That month FirstEnergy's Director of Labor Relations, Eileen McNamara, and several other labor-relations executives called the leaders of 23 union locals to tell them about the changes.   On September 18, McNamara called Herman Marshman, the president of Local 272 of the International Brotherhood of Electrical

Workers.  McNamara read from a prepared script and explained that, as of January 1, 2013, the company would reduce its cap for 401(k) matching payments by 33%, reduce its retiree life-insurance benefit by 60%, and cap its educational-reimbursement benefit for the first time.  She also told Marshman that employees would receive a service award every ten years rather than every five.  When McNamara was done, Marshman responded, "Oh no you don't!  Again?  Now you know I have to file a board charge honey."  Marshman added that he would "have to come to Akron [the company headquarters] for this one."  McNamara emailed her supervisor to tell him that "[Marshman] is not happy" and that she was "sure [Marshman] is serious about the charge and coming to Akron."

Marshman never followed through on the promise to come to Akron.  Six weeks after the call with McNamara, however, Marshman filed an unfair labor-practices charge with the Board on behalf of Local 272.  The charge asserted that FirstEnergy had violated its duty to bargain in good faith with the union, *see* 29 U.S.C. § 158(a), "by making unilateral changes in 401(k) savings, future retiree benefits, educational reimbursement, and employee service awards."

For reasons not revealed by the record, the litigation of this charge concerned only the change with the least monetary significance—namely, the employee-service awards.  Over FirstEnergy's objections, an administrative-law judge acting on the Board's behalf found that the employee-recognition program was a mandatory subject of bargaining under the National Labor Relations Act, that Marshman's comments to McNamara amounted to a request to bargain about the program, and that FirstEnergy failed to bargain with the union (a point that neither side disputed) before changing the award cycle for each employee from five years to ten. The ALJ therefore ordered FirstEnergy to rescind its change to the program and to give the appropriate award to the 43 employees who had not received an award as a result of the change.  The Board affirmed the ALJ's order on a 2-1 vote, with Member Miscimarra dissenting on the ground that, "[a]t most, Marshman's responses constitute the type of protest or objection that the Board, in numerous cases, has found *not* to be [the subject of bargaining]."  *Ohio Edison Co.*, 362 N.L.R.B. No. 88, at *3 (May 21, 2015).  FirstEnergy thereafter brought this petition for review and the Board filed a cross-application for enforcement of its order.

FirstEnergy challenges both the Board's determination that the employee-recognition program rose to the level of "wages, hours, and other terms and conditions of employment[,]" 29 U.S.C. § 158(d), and its finding that Marshman's comments to McNamara amounted to a request to bargain about the program. We choose to begin with the latter finding, which we review for substantial evidence, that is, evidence sufficient "for a reasonable factfinder to reach the conclusions the Board has reached." *Peters v. NLRB*, 153 F.3d 289, 294 (6th Cir. 1998).

The parties agree on the applicable standard as to whether a union has made a request to bargain about an employer's proposed change in a condition of employment. As the Third Circuit put it in a seminal case, "[a] request to bargain need follow no specific form or be made in any specific words so long as there is a clear communication of meaning, and the employer understands that a demand is being made." *NLRB v. Barney's Supercenter, Inc.*, 296 F.2d 91, 93 (3d Cir. 1961); *see also, e.g., Dupont Dow Elastomers, L.L.C. v. NLRB*, 296 F.3d 495, 507 (6th Cir. 2002) ("[a]s long as it is clear that a union wants to bargain on behalf of its members, 'a demand to bargain collectively need assume no particular form'" (quoting *NLRB v. Wayne Convalescent Ctr., Inc.*, 465 F.2d 1039, 1043 n. 7 (6th Cir. 1972))). Thus the substance of a union's request, not the form, is what counts; but the substance must clearly be a request to bargain.

We make two other points about the applicable standard. First, "'the bargaining representative must do more than merely protest the change; it must meet its obligation to request bargaining.'" *YHA, Inc. v. NLRB*, 2 F.3d 168, 173 (6th Cir. 1993) (quoting *Jim Walter Res., Inc.*, 289 N.L.R.B. 1441, 1442 (1988)). The difference between the two is straightforward: to protest is to seek change by expressing disapproval; to request bargaining, in contrast, is to seek change by signaling a willingness to offer something in return. *Cf. Black's Law Dictionary* 169 (9th ed. 2009) (defining "bargain" as an agreement "for the exchange of promises or performances"). Second, in determining whether a union has requested bargaining, "[s]tatements and acts of the union or the employer cannot be viewed in isolation." *Barney's Supercenter*, 296 F.2d at 93. Instead we consider "all the circumstances." *Id.*

The Board's two-member majority neglected to consider all the circumstances here. Instead, the Board focused almost exclusively on Marshman's comments during the call with

McNamara—which to some extent is understandable, since those comments are the only actions on behalf of Local 272 that could possibly amount to a request to bargain. Those comments, to reiterate, came after McNamara had read her script, and were the following: "Oh no you don't! Again? Now you know I have to file a board charge honey[,]" and that Marshman would "have to come to Akron [the company headquarters] for this one." These comments expressed disapproval, to be sure; but that establishes only protest. The pertinent question is whether, in light of the record as a whole, they clearly signaled a request to bargain. On that point they were at best ambiguous rather than clear. The threat to file a "board charge" was not a request to bargain; to the contrary, a charge is a formal protest that commences administrative proceedings rather than negotiations. Nor was Marshman's threat (which turned out to be empty) to "come to Akron" clearly a request to bargain. The company and the Board both interpret this comment to mean that Marshman "wanted to complain to Tony Alexander," who was the company's CEO at the time. Board Br. at 45 (quoting McNamara's testimony). But a complaint is more like a protest than a request to bargain. And if Marshman wanted to engage in collective bargaining, the person with whom he would do so was not Alexander, but the person already on the phone with him: Eileen McNamara, the company's Director of Labor Relations. The reality is that Marshman's comments were cryptic rather than clear.

The surrounding circumstances only undermine the Board's interpretation of the phone call. To begin, the Board largely overlooks that the change to the employee-recognition program was hardly the only change that McNamara described on the call. To the contrary, she described several other changes—including that the company would reduce by one-third the cap for its 401(k) matching payments and cut the retiree life-insurance benefit from $25,000 to $10,000—whose financial consequences for the Local's members were far greater than whether they had to wait ten years rather than five to receive a free alarm clock or fishing rod. That is not to say the employee-recognition program was unimportant: such programs recognize the dignity and dedication of persons who otherwise might receive little recognition. But bargaining in a business setting usually concerns money rather than symbolism, and here the monetary consequences of the change to the recognition program amounted to less than four dollars per member per year. Hence one can be skeptical that Marshman's comments reflected a desire to bargain about that program in particular. That skepticism only grows when one considers that

the parties had never bargained about the program between its inception in 1973 and the events giving rise to this litigation 39 years later. Common sense and the parties' course of dealings therefore provide good reason to think that, whatever Marshman meant by his comments, he did not mean (much less clearly mean) that he wanted to bargain about the employee-recognition program.

The Board contends that McNamara's email to her supervisor shortly after the phone call shows that she indeed thought that Marshman had requested bargaining about the employee-recognition program. We fail to see how. The email stated that "[Marshman] is not happy" and that "[Marshman] is serious about the charge and coming to Akron." *Id.* Those comments reflect protest as much as, if not more than, they reflect a request to bargain. And again they give little reason to think that Marshman was complaining about the employee-recognition program in particular.

The Board also contends that our decision in *Peters* is "materially analogous" to this case. But there the surrounding circumstances could hardly have been more different, since the employer had unilaterally renounced its entire collective bargaining agreement with the union. *Peters*, 153 F.3d at 292. The union's written request for a meeting to discuss the status of that agreement was thus reasonably viewed as a request to bargain.

Finally, the Board contends that Local 272's unfair labor-practices charge six weeks after the call shows that Marshman requested bargaining about the employee-recognition program during the call. Again we do not see it. As the Board itself recognizes, an unfair labor-practice charge is no substitute for a request to bargain. *See* Board Br. at 48; *NLRB v. Okla. Fixture Co.*, 79 F.3d 1030, 1037 (10th Cir. 1996) ("[t]he filing of an unfair labor practice charge does not relieve the Union of its obligation to request bargaining"); *Associated Milk Producers, Inc.*, 300 N.L.R.B. 561, 564 (1990) ("[i]t was incumbent on the Union to request bargaining—not merely to protest or file an unfair labor practice charge"). Moreover, as already discussed, the charge itself was a form of protest. On these facts the charge does not convert Marshman's comments into a request for bargaining.

The record in this case, construed reasonably and as a whole, would not allow a reasonable person to find that Marshman's comments during his call with McNamara were clearly a request to engage—for the first time ever—in collective bargaining about the employee-recognition program.  The record instead supports the view of the Board's dissenting member in this case.

\*     \*     \*

We grant FirstEnergy's petition for review, and deny the Board's application for enforcement of its May 21, 2015 Decision and Order.