NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

W. C. McQUAIDE, INC., Respondent.

No. 79–1523.

United States Court of Appeals,
Third Circuit.

Argued Feb. 6, 1980.

Decided March 25, 1980.

---

William R. Stewart, Deputy Asst. Gen. Counsel (argued), Lawrence J. Song, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Stephen J. Cabot (argued), Kenneth M. Jarin, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for respondent.

Before HUNTER, VAN DUSEN and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

VAN DUSEN, Senior Circuit Judge.

The National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 151, *et seq.*, petitions for enforcement of its orders issued against W. C. McQuaide, Inc.[1] This is the second time this matter has come before this court. In our first opinion[2] we enforced the Board's order in part and remanded for further proceedings concerning the reinstatement rights of 19 dockworkers who had been replaced during the strike. On remand the General Counsel only sought relief for 11[3] of the 19 dockworkers. The Board issued orders granting relief to all 11 dockworkers. We will enforce the orders.

### I.

The underlying facts of the case were clearly set forth in the original opinion, 552 F.2d at 523–525:

"W. C. McQuaide, Inc. (Company) is a family-held corporation which operates a trucking business from its terminal at Johnstown, Pennsylvania. Before the commencement of the strike, the Company employed approximately 300 employees. On April 1, 1974, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Local 110 (the Union) served on the Company a letter in which it claimed to represent a majority of the drivers and warehousemen. When the Company refused recognition, the Union filed a representation petition with the Board seeking an election. On April 17, 1974, between 120–150 employees struck. The strikers picketed the various entrances to the McQuaide terminal and utilized roving pickets at delivery points. The purpose of the strike was to obtain recognition of the Union, to get a prompt elec-

---

1. The Board's orders are reported at 237 N.L.R.B. No. 26 (1978) and 239 N.L.R.B. No. 87 (1978).

2. *NLRB v. McQuaide, Inc.,* 552 F.2d 519 (3d Cir. 1977).

3. The 11 dockworkers are: W. V. Barefoot, A. B. Carr, S. L. Edwards, K. C. Huntzinger, R. E. Josephson, R. J. McNulty, R. J. Kessler, T. Prudhoe, G. S. Marion, J. M. Dikum, and T. N. Spisak.

tion, and to secure improvements in wages and working conditions.

. . . . .

"The strike continued and the Company transferred ten employees from other departments to the dock and hired fourteen new employees. On May 17, 1974, nineteen striking dockworkers were notified that they had been permanently replaced. . . .

"On August 8, 1974, the Company, the Union and their attorneys met at a hearing before the Pennsylvania Unemployment Compensation Board of Review. The Company's attorney, Stephen Cabot, stated that the Company was 'ready, willing and able' to take back any employee who wanted to come back. The statement was made privately to Union President Adams as well as in response to the Referee's questions. On the same date, the Union sent a letter to the Company stating that the strikers were 'unconditionally ready, willing and able to return to work immediately.' The Union terminated all pickets except those at the main entrance to the terminal.

"Upon receipt of the Union's letter on August 12, 1974, Company President L. McQuaide sent the following letter to a large number of employees:

'Today, for the first time, I have received information which leads me to believe that you may be willing to return to work unconditionally, and to do so at once.

'If you desire to return to work unconditionally, please notify me of your:

'1. Intention to return to work, and

'2. The earliest available date you can return to work.

'If you want your previous job which is available, contact me as soon as possible.'

"On August 15, 1974, L. M. McQuaide wrote two additional letters to employees. To the dockworkers who had received the replacement letter, he wrote:

As you know on May 17, 1974 I wrote a letter informing you that you were permanently replaced. I would appreciate hearing from you no later than Friday, August 23, 1974, if you have any desire to work for W. C. McQuaide, Inc. If you are currently available and desire to fill a vacancy should one occur, please notify me of your intention no later than August 23, 1974. If possible, please convey this information to me at my office.

"The following letter was sent to the other strikers:

Today, for the first time, I have received information that leads me to believe that you may be willing to return to work unconditionally and to do so at once.

If you desire to return to work unconditionally, please notify me of your:

1. Intention to return to work, and

2. The earliest available date you can return to work.

If I do not hear from you by Friday, August 23, 1974, I will assume that you have no desire to return to work. If possible, please see me at my office to discuss this matter.

"During this period of time, Cabot again told Adams that jobs were available to employees who requested them.

. . .

"On August 29, 1974, L. McQuaide wrote to all strikers who had responded to the Company's August 15 letter. Appointments were scheduled for them to see him in his office. To those who had not responded, L. McQuaide sent letters stating his assumption that they no longer desired to work for the Company and that he would have their personnel records marked accordingly.

. . . . .

"Between August 18 and November 11, 1974, the Company hired ten new drivers and thirty new dockworkers in addition to the strikers who were reinstated in August.

"The Board filed unfair labor practice charges in October 1974, alleging that the Company violated Section 8(a)(1) and (3) of the Act . . . by failing to rein-

state certain named dockworkers . . A hearing was held before an Administrative Law Judge who found:

.    .    .    .    .

"(3) that the Union's offer to return to work was *bona fide* and unconditional;

"(4) that neither the Company's statements of August 8 nor the letters of August 12 and 15, 1974 were valid, unconditional offers of reinstatement;

"(5) that the Company unlawfully failed to reinstate nineteen named dockworkers and other unnamed strikers after August 12, 1974;

.    .    .    .    .

He recommended a broad cease and desist order, the posting of notices and an offer of full reinstatement . . . to the nineteen named strikers . . . with back pay running from five days after August 12, 1974."
(Footnotes omitted.)

With regard to the dockworkers, the ALJ's first opinion held that the Company's statement of August 8, 1974, that it was ready, willing, and able to take back any employees who wanted to come back, removed any distinction between economic and unfair labor practice strikers in regard to reinstatement. The elimination of this distinction had significant consequences with respect to reinstatement rights. As our prior opinion explained, 552 F.2d at 528–29:

"An economic striker, as distinct from an unfair labor practice striker, who unconditionally requests reinstatement is entitled to his former position unless the employer has 'legitimate and substantial business justifications' for refusing. *NLRB v. Great Dane Trailers*, 388 U.S. 26, 34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). He may, however, be permanently replaced during the strike, and proof that such a replacement is on the job is recognized as an adequate justification for an employer's denial of reinstatement. *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345–346, 58 S.Ct. 904, 82 L.Ed. 1381 (1936). . . . In contrast, unfair labor practice strikers are entitled to reinstatement even if replacements have been hired. *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 76 S.Ct. 349, 100 L.Ed. 309 (1956)."

Having held that the August 8 statement eliminated any distinction between economic and unfair labor practice strikers, the ALJ concluded that the dockworkers had a right to reinstatement. If such was the case, it was manifest that the Company's August 15 letter to the dockworkers was insufficient compliance with the obligation to offer reinstatement.[4] The Board adopted the portion of the ALJ's first opinion concerning the dockworkers, issued an order requiring reinstatement and other relief, and petitioned for enforcement.

This court held that the August 8, 1974, statement did not eliminate the distinction between economic and unfair labor practice strikers. 552 F.2d at 531. Accordingly, we were obligated to remand for determination as to whether any legitimate and substantial business justifications existed to justify the company's failure to offer reinstatement to the dockworkers. As the Company had argued to the ALJ and the Board that

---

4. The August 15, 1974, letter to the dockworkers stated:

"As you know on May 17, 1974, I wrote you a letter informing you that you were permanently replaced. I would appreciate hearing from you no later than Friday, August 23, 1974 if you have any desire to work again for W. C. McQuaide, Inc.

"If you are currently available and desire *to fill a vacancy should one occur,* please notify me of your intention no later than August 23, 1974. If possible, please convey this information to me at my office."
(Emphasis added.)

This letter is not an offer of reinstatement. It only recognizes an obligation to offer reinstatement when jobs become available to strikers who have been properly replaced by *bona fide* replacements. Our prior opinion explained that:

"We read this letter as a recognition by the Company of its obligation to offer reinstatement, as jobs became available, to those replaced strikers who had not found 'other regular and substantially equivalent employment.' "
552 F.2d at 532.

it had filled the dockworkers' positions with *bona fide* replacements, which is a substantial business justification under *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345–46, 58 S.Ct. 904, 82 L.Ed. 1381 (1936), this court remanded for a determination of the *bona fide* status of the replacements. We also remanded for findings concerning responses to the Company's August 15 letter to the dockworkers because we held that the Company's letter reasonably asked the dockworkers to notify the company of their interest in a job by August 23, and that "those who failed to respond should not be entitled to reinstatement." 552 F.2d at 532. Thus we remanded "for factual findings (1) as to whether the hired replacements were *bona fide* and (2) as to which of the nineteen dockworkers responded to the company's letter." *Id.*

## II.

■ The Board remanded these questions to the ALJ for further findings. At the second hearing before the ALJ, and again at oral argument before this court, counsel for the Company admitted that "as of August 23, 1974, jobs were available for any and all of the nineteen dockworkers who were laid off on May 17 had they made a timely and proper application for reinstatement by that date."[5] On remand the ALJ noted that:

"This concession would seem to eliminate any defense which the [Company] might now assert that it had any substantial business justification for denying rein-

statement to striking dockworkers . . . .'[6]

Later the ALJ held that:

"Where, as here, the employer admits that jobs were available to returning strikers who sought them, [a] defense of replacement is unavailable, even if the strikers were economic strikers."[7]

The Board adopted this ground as one of several theories supporting its position that the dockworkers were entitled to an offer of reinstatement,[8] and the General Counsel forcefully argued this ground at oral argument. When asked at oral argument if this concession made the first issue on remand, the *bona fide* status of the replacements, irrelevant to the determination of whether there was a substantial business justification for the failure to offer reinstatement to the dockworkers, counsel for the Company acknowledge that it did.[9] Thus, the parties agree, and we hold that, as the Company had positions available on August 23, 1974, for the dockworkers, the existence of *bona fide* replacements could not justify the Company's failure to offer the dockworkers the positions available. An economic striker is entitled to reinstatement "if and when a job for which [he] is qualified becomes available." *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 381, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967). The fact that his old job is occupied is no excuse for refusing to offer reinstatement if another job for which he is qualified becomes available.

The Company's only other economic justification offered to explain its failure to offer reinstatement to the dockworkers is

---

5. A. 684.

6. A. 3.

7. A. 11.

8. 237 N.L.R.B. No. 26, A. 115.

9. The colloquy at oral argument included the following:

"Judge Sloviter: . . . What I'm saying is that, why do we have to decide whether there were permanent replacements at all? Why is that currently an issue before us, once you conceded that notwithstanding whether or not these were permanent replacements there were

positions available as of August 23? That's the question.

"Judge Sloviter: . . . what is the relevance of the, replacement, of the permanent replacement, to this case, now? I mean why do we have to go into the whole issue?
"Counsel for Company: You probably don't have to.
"Judge Sloviter: Okay. That's right. Fine.
"Counsel: Okay; you probably don't have to. The issue really in this case in terms of monetary responsibility for the employer is whether or not people replied by the 23rd."

that it was having trouble returning to full operations in the wake of the strike and that this caused a delay in its ability to offer reinstatement. However, the Company previously offered this justification for its delay in offering reinstatement to the employees, other than the dockworkers, to whom it sent its August 12 and August 15 letters offering reinstatement. The Board rejected this excuse, and in our first opinion this court found substantial evidence supporting the Board's determination. 552 F.2d at 530–31. Thus, the merits of this justification have previously been decided against the Company.

■ As the Company bears the burden of showing that legitimate and substantial business reasons justified its refusal to reinstate economic strikers, *NLRB v. Great Dane Trailers*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967), and *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 380, 88 S.Ct. 543, 546, 19 L.Ed.2d 614 (1967), and as the Company has failed in carrying this burden, we hold that the Board did not err in holding that the Company was obligated to offer the dockworkers reinstatement.

### III.

The Company argues that, even if it was obligated to offer reinstatement to the dockworkers, it should only be liable to those dockworkers who responded to the August 15 letter by August 23 [10] which was the second issue remanded to the Board. We disagree.

■ As explained in the prior opinion, 552 F.2d at 531–32:

"The employer bears the burden of showing that legitimate and substantial business reasons (including the hiring of replacements) justify his refusal to reinstate economic strikers. *N. L. R. B. v. Great Dane Trailers, supra* 388 U.S. at 34, 87 S.Ct. 1792. Here, the Company presented evidence concerning replacements. It may well be that these replacements are *bona fide* and that, therefore, the nineteen striking dockworkers

were not entitled to reinstatement until substantially equivalent positions became available. On the other hand, it may be well that the replacements were not *bona fide* and, *in that event, the nineteen dockworkers would be entitled to reinstatement on the same basis as the other strikers.*"

(Emphasis added.)

Because of the availability of jobs on August 23, there was no substantial business reason justifying the refusal to offer reinstatement, and, accordingly, the dockworkers were entitled to reinstatement on the same basis as the other strikers. This basis is clearly set out in the prior opinion. As noted, 552 F.2d at 528, "[a]n economic striker . . . who unconditionally requests reinstatement is entitled to his former position unless the employer has 'legitimate and substantial business justification' for refusing." The only obligation placed upon the striker is that he unconditionally request reinstatement. The prior opinion of this court held that the Union made such an offer for all strikers. We held at 529 of 552 F.2d that

"[s]ubstantial evidence supports the Board's finding that the Union's offer on behalf of the strikers was *bona fide* and unconditional. The plain words of the Union's August 8, 1974, letter can have no other import. We do not question the Union's authority to act on behalf of the strikers."

As the striking dockworkers thus made an unconditional offer, and the Company had no substantial business justification for failing to reinstate them, the dockworkers were entitled to an offer of reinstatement. Instead of receiving such an offer, the dockworkers received the August 15 letter, which merely inquired into their interest in future openings. The Company had no right to require the employees to repeat the statement of interest made by the Union. Accordingly, the dockworkers were under no obligation to respond to the August 15 letter. An employee should not be held to

---

**10.** See notes 5 and 9 above.

have waived his right to be offered reinstatement due to his failure to respond to a letter which did not offer reinstatement. As noted in *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 381, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967), "[t]he right to reinstatement does not depend upon technicalities relating to application." See also *Spitzer Akron, Inc.*, 219 N.L.R.B. 20, 24 (1975), *enforced*, 540 F.2d 841 (6th Cir. 1976), and *Scalera Bus Service, Inc.*, 210 N.L.R.B. 63 (1974).

Thus, the question of which dockworkers responded to the August 15 letter by August 23, which was the second issue remanded to the Board, would only be relevant to the resolution of this case if the Company had in fact established a substantial business justification for its failure to offer immediate reinstatement to the dockworkers. We have concluded that the Company did not do so for the reasons stated above.

The Board's orders will be enforced.