**GIDDINGS & LEWIS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 81–1702.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1982.

Decided April 19, 1982.

Herbert P. Wiedemann, Foley & Larfner, Milwaukee, Wis., for petitioner.

Collis Suzane Stocking, Elliott Moore, N. L. R. B., Washington, D. C., for respondent.

Before CUMMINGS, Chief Judge, and SPRECHER and WOOD, Circuit Judges.

SPRECHER, Circuit Judge.

This case raises the question, for the first time in this circuit, of whether unreinstated economic strikers have a right to be reinstated before laid-off permanent replacement workers with less seniority are recalled. Because we find that there is no such right, we deny enforcement of the National Labor Relations Board's order in this case.

## I

Giddings & Lewis, Inc., ("the employer") operates three manufacturing divisions which produce machine tools and related products. In September, 1975, the employer's collective bargaining agreement with Local 1402 of the International Association of Machinists and Aerospace Workers, the union representing the employees of all three divisions, expired. A work stoppage followed, which was later determined by the National Labor Relations Board ("NLRB" or "Board") to have been an economic strike. *Giddings & Lewis, Inc.*, 240 NLRB 441 (1979). During the strike, which lasted for more than a year, 323 permanent replacement workers were hired.

When the strike ended with the union's unconditional offer to return to work, the company did not fire any of the replacement workers, but established a preferential hiring list of strikers who had been permanently replaced. As employees quit their jobs or were terminated, the employer hired off this list.[1]

As of October, 1978, 176 of the 700 employees originally on the preferential hiring list remained on the list.[2] The employer then issued employee handbooks for each of its divisions. These handbooks contained new rules pertaining to seniority which provided that, in the event of a layoff of employees, permanent replacements and reinstated strikers would be recalled on the basis of seniority.[3] Thus, permanent replacements and reinstated strikers would not lose their positions to more senior unreinstated strikers should a layoff occur.[4]

---

1. By June of 1979, the employer's work force consisted of 258 reinstated strikers, 22 strikers who had returned to work during the course of the strike, and 229 replacement workers.

2. For economic and administrative reasons, the work force after the strike was somewhat smaller than it had been before the strike. Counsel asserted in oral argument that all the original strikers have now been reinstated or

offered reinstatement. Thus, the significance of the Board's order revolves around its impact on the employer's future practices.

3. Reinstated strikers received full credit for their pre-strike seniority.

4. The seniority rules provided, in part, that as employees were needed following a layoff, workers would be recalled or transferred in a

Employees would be eligible for recall for a period of time equal to the time which they had worked for the company. A layoff, therefore, did not activate a striker's right to reinstatement.

The union filed a charge alleging that the promulgation of the seniority rules violated §§ 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("Act"). 29 U.S.C. § 151 *et seq.* The Regional Director of the NLRB issued a complaint, and a hearing was held before an administrative law judge. The administrative law judge issued a decision and order dismissing the complaint, based largely on the Board's decision in *Bancroft Cap Co.*, 245 NLRB 547 (1979), in which the Board held that unreinstated strikers do not have a statutory right of recall ahead of laid-off replacements who have a reasonable expectation of recall.

The General Counsel and the union filed exceptions to this decision and the Board overruled the administrative law judge, finding that the holding in *Bancroft* was limited to brief layoffs, "such as would result from acts of God, brief parts or materi-

als shortages, or relatively short term loss of business."[5] *Giddings & Lewis, Inc.*, 255 NLRB No. 93 at 10 (1981). The Board held that the employer violated §§ 8(a)(1) and (3) of the Act by promulgating its seniority rules.[6] The Board found that the seniority system interfered with the exercise of § 7 rights and discriminated against strikers by preferring replacement workers to unreinstated strikers in hiring following a layoff. Sections 8(a)(1) and (3) applied because unreinstated strikers remain employees under § 2(3) of the Act, 29 U.S.C. § 152(3), until they obtain "other regular and substantially equivalent employment."[7] Having found that the employer violated the Act, the Board ordered appropriate remedies. The employer petitions for review of the Board's order, and the Board cross-petitions for enforcement of its order.

## II

■ The scope of our review of the Board's decision is necessarily limited. When the Board's decision rests upon an

specific order according to classifications established by the rules. Within each classification, seniority would prevail and separate seniority lists would be maintained for each of the employer's divisions. The first employees to be recalled would be those who were working for the employer at the time of the layoff (reinstated and replacement workers) in the job classification and division for which the job opening occurred. Next, employees currently working in another job classification, but within the division in which the opening occurred, who are qualified to perform the work or are capable of becoming qualified "with a reasonable period of training" would be placed in the job. The third group to be considered would be reinstated strikers and permanent replacements on layoff from the division in which the job opening occurred who are, or could be "with a reasonable period of training," qualified to do the work. The fourth classification would be unreinstated workers. Only if the job remained unfilled after these classifications were exhausted would a new individual be hired.

The Board did not challenge the employer's job-bidding procedures which favored currently working employees. Thus, our discussion will be concerned with the different treatment accorded the first, third and fourth categories of employees under the seniority system.

5. While it did not so state explicitly, the Board apparently held that replacement workers who were laid off due to fluctuations in economic activity would not receive this protection unless, perhaps, the layoff was for an extremely brief period.

6. Section 8(a) of the Act, 29 U.S.C. § 158(a), provides, in relevant part,

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7, guaranteeing rights pertaining to self-organization, concerted action, and collective bargaining] . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . .

7. Section 2(3) of the Act, 29 U.S.C. § 152(3) provides, in relevant part,

The term "employee" shall include . . . any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment. . . .

interpretation of the Act, we will uphold the decision if it "is an acceptable reading of the statutory language and a reasonable implementation of the purposes of the relevant statutory sections." *NLRB v. Local 103, International Association of Bridge, Structural & Ornamental Iron Workers, AFL–CIO*, 434 U.S. 335, 341, 98 S.Ct. 651, 655, 54 L.Ed.2d 586 (1978) (footnote omitted). "But recognition of the appropriate sphere of the administrative power here obviously cannot exclude all judicial review of the Board's actions." *NLRB v. Insurance Agents' International Union, AFL–CIO*, 361 U.S. 477, 499, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1960). Thus, we will refuse to enforce the Board's decision when we are "unable to find that any fair construction of the provisions relied on by the Board ... can support its finding of an unfair labor practice," or when "the role assumed by the Board ... is fundamentally inconsistent with the structure of the Act and the function of the sections relied upon." *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965). Application of these principles to the case at hand leads us to conclude that the Board's order should not be enforced.

### A

The issue before us is governed by the Supreme Court's decision in *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 58 S.Ct. 905, 82 L.Ed. 1381 (1938). There, the Court established for the first time the power of an employer "to replace the striking employes with others in an effort to carry on the business." *Id.* at 345, 58 S.Ct. at 910. The Court recognized that the Act prohibits interference with the right to strike, but found that "it does not follow that an employer, guilty of no act denounced by the statute, has lost the right to protect and continue his business by supplying places left vacant by strikers." *Id.*[8] The Court also found that the employer could make those replacements permanent, noting that the employer

is not bound to discharge those hired to fill the places of strikers, upon the election of the latter to resume their employment, in order to create places for them. The assurance by respondent to those who accepted employment during the strike that if they so desired their places might be permanent was not an unfair labor practice nor was it such to reinstate only so many of the strikers as there were vacant placed to be filled.

*Id.* at 345–46, 58 S.Ct. at 910–11 (footnote omitted). The Court did find, however, that unreinstated strikers continued to be employees, and therefore were entitled to priority consideration for any vacancies that were available.

Subsequent cases have read *Mackay* as employing a balancing test in arriving at the conclusion that the hiring of replacement workers was permissible under the Act. This balancing test weighed the inevitable negative impact on union activity of hiring permanent replacement workers against the business justification for doing so. *See, e.g., NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378–79, 88 S.Ct. 543, 545–46, 19 L.Ed.2d 614 (1967); *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 232, 83 S.Ct. 1139, 1147, 9 L.Ed.2d 53 (1963). This circuit has recognized, however, that *Mackay* eliminates the need for any case-by-case application of the test to justify the hiring of permanent replacement workers:

One such justification for refusing to reinstate is that an employer may hire permanent replacements to perform the strikers' tasks.... The rationale for this exception to the general rule is that the employer's interest in continuing his business during a strike and the needed inducement of permanent employment to obtain replacements is a sufficient business justification overcoming protection for economic strikers.

*NLRB v. Mars Sales & Equipment Co.*, 626 F.2d 567, 572 (7th Cir. 1980) (citations omit-

---

**8.** By restricting this right to employers "guilty of no act denounced by the statute," the Court limited its analysis to economic strike replacements. In the event of unfair labor practice strikes, employers must offer reinstatement to all strikers. *Mastro Plastics v. NLRB*, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956).

ted). *Accord, NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 379, 88 S.Ct. 543, 546, 19 L.Ed.2d 614 (1967); *Laidlaw Corp. v. NLRB*, 414 F.2d 99, 105 (7th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970).

*Mackay* thus stands for the proposition "that an employer may refuse to reinstate economic strikers if in the interim he has taken on permanent replacements." *NLRB v. International Van Lines*, 409 U.S. 48, 50, 93 S.Ct. 74, 76, 34 L.Ed.2d 201 (1972). "Economic strikers who have been permanently replaced are entitled to reinstatement only as vacancies occur thereafter in the employer's work force." *NLRB v. Murray Products, Inc.*, 584 F.2d 934, 938 (9th Cir. 1978). *Accord, Winn-Dixie Stores, Inc. v. NLRB*, 448 F.2d 8, 12 n.11 (4th Cir. 1971).

We find the *Mackay* rule to be dispositive of this case. The employer here has hired replacements for economic strikers and assured the replacements, through promulgation of the seniority rules in question, that their positions are permanent. In light of the inevitable fluctuations which occur in the nation's economy, with their concomitant impact on the labor force, such a system serves only to assure replacements the permanent status to which *Mackay* says they are entitled. Affirmance of the Board's holding that layoffs activate a striker's right to reinstatement would eviscerate the *Mackay* rule. Employers attempting to hire replacement workers could guarantee them employment only until a layoff occurred. Such replacement workers could hardly be called "permanent." In the event of a layoff, unreinstated workers

would inevitably replace their "permanent" replacements. Such an outcome would significantly interfere with what the *Mackay* Court found to be the employer's legitimate interest in maintaining production during an economic strike.

## B

The Board directs us to cases decided since *Mackay* which hold that discrimination among employees on the basis of whether they have participated in protected union activity is unlawful. These cases, however, do not serve to remove the instant case from the scope of the *Mackay* rule. Rather, they are consistent with that decision. Thus, in *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 83 S.Ct. 1139, 9 L.Ed.2d 53 (1963), the Court held that once strikers reentered the work force they could not be discriminated against in favor of non-strikers.[9] *Erie Resistor* thus involved only the rights of strikers *who had been reinstated.* In this case, however, workers are not classified according to whether or not they engaged in the strike, but rather, according to whether or not they are in the work force at the time of a layoff. Thus, reinstated strikers are treated no differently than replacements under these rules.

Similarly, *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967), and *Laidlaw Corp. v. NLRB*, 414 F.2d 99 (7th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970), are cases which are easily distinguishable and do not serve to remove the present case from the scope of the *Mackay* rule.[10] *Fleet-*

**9.** In *Erie Resistor*, the Court examined a "super-seniority" rule which provided a twenty year seniority credit to strike replacements and workers returning to work during the strike. This seniority applied only to future layoffs, with the result that reinstated strikers faced a much greater likelihood of layoff than non-strikers. The Court found this system to be invalid, emphasizing that the system clearly discriminated against strikers in favor of non-strikers and was, therefore, specifically prohibited by the Act. *Id.* 373 U.S. at 231, 83 S.Ct. at 1147. Unlike the situation in *Mackay*, no business purpose outweighed the serious damage to concerted activities resulting from the super-se-

niority system. *Id.* 373 U.S. at 232, 83 S.Ct. at 1147. The Court emphasized, however, that it had "no intention of questioning the continuing vitality of the *Mackay* rule." *Id.*

**10.** The Supreme Court in *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1963), held that, absent substantial business justification, the right to reinstatement continued until the striker obtained other, substantially equivalent, employment. In so ruling, the Court overruled the Board's decision in *Atlas Storage Division, P & V Atlas Indus. Center, Inc.*, 112 NLRB 1175 n.15 (1955), *petition for review denied*, 233 F.2d 233 (7th Cir. 1956), where the Board held that the right to

*wood* and *Laidlaw* stand for the proposition that unreinstated strikers retain the right to reinstatement until such time as they accept other, substantially equal, employment. Here, however, the employer's seniority policy provides for a preferential hiring list which assures qualified strikers that they will be rehired ahead of any new applicants. Thus, the conduct the *Fleetwood* and *Laidlaw* courts found unlawful is not alleged in this case.

The Board further asserts that a line of NLRB decisions establishes a uniform rule that unreinstated strikers have a right to reinstatement when a vacancy occurs. *MCC Pacific Valves*, 244 NLRB 931 (1979); *Wisconsin Packing Co.*, 231 NLRB 546 (1977). While we agree with the Board's summary of these decisions, we do not believe that they apply in this case. A layoff, by definition, is not a termination of the employment relationship. The employee retains his or her status as an employee, but is placed in an "inactive" status for the period of the layoff. There is, therefore, no creation of a "vacancy" in the work force which would entitle a striker to reinstatement, under either the Board's decisions or the court decisions examined above.[11]

Thus, none of the authorities cited by the Board support a departure from the *Mackay* rule in this case. The seniority system does not discriminate between strikers and non-strikers, nor does it deny unreinstated strikers the right to reinstatement should vacancies occur in the work force. Rather, it constitutes the very practice upheld in *Mackay*: the assurance of permanent status to replacement workers.

### III

We hold, therefore, that an employer does not violate §§ 8(a)(1) and (3) of the Act by promulgating rules providing that members of the existing work force will be rehired in order of seniority, but before unreinstated strikers, in the event of a layoff. The Board's petition for enforcement of its order is

DENIED.

reinstatement existed only if there were vacancies at the time of the striker's application for reinstatement. As it had in *Erie Resistor*, the Court identified the fact situation in *Mackay* as a legitimate and substantial business justification for refusing to reinstate workers. "[W]hen the jobs claimed by the strikers are occupied by workers hired as permanent replacements during the strike in order to continue operations," the employer is not required to reinstate the strikers in preference to the replacements. 389 U.S. at 379, 88 S.Ct. at 546.

In *Laidlaw Corp. v. NLRB*, 414 F.2d 99 (7th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970), this court held that the right to reinstatement persisted even if replacements had been hired in the interim. Thus, even the replaced striker was entitled to reinstatement if the replacement subsequently left the position. The court, however, clearly distinguished this situation from that in *Mackay*, noting that "[t]here is no question about the retention of the replacements who were hired during the strike on a permanent basis. The only question is whether the strikers are to be considered employees after the strike, having rights to reinstatement *if the replacements depart from their jobs*." *Id.* at 105 (emphasis added).

11. Furthermore, we believe, as did the administrative law judge below, that the more applicable decision of the Board is *Bancroft Cap Co.*, 245 NLRB 547 (1979). In *Bancroft*, the Board upheld an administrative law judge's finding that an employer did not commit an unfair labor practice in recalling laid-off replacement workers before reinstating strikers. The Board limited this finding to situations in which the laid-off employees had "a reasonable expectation of recall." *Id.* at 547 n.1. Because the layoff in question had been brief, the Board found that a reasonable expectation of recall existed. *Id.* Here, the employer promulgated rules which specifically set forth the period during which employees will be considered to be laid off and entitled to recall. The rules thus provide employees with a reasonable expectation of recall for a defined period.