**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HARRISON READY MIX CONCRETE, INC., Respondent.**

No. 84–6063.

United States Court of Appeals, Sixth Circuit.

Argued July 11, 1985.

Decided Aug. 13, 1985.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Suzanne Stocking, Frances O'Connell (argued), Washington, D.C., for petitioner.

J. Michael Fischer (argued), Ennis, Roberts and Fischer Co., Cincinnati, Ohio, for respondent.

Before MARTIN and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This is an enforcement action by the National Labor Relations Board. The NLRB, in a 2–1 decision, held that the respondent's failure to reinstate two returning strikers with full seniority was an unfair labor practice, distinguishing *NLRB v. Mackay Radio Co.*, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). We deny enforcement of the order.

Harrison Ready Mix Concrete, Inc., produces and sells ready mix concrete at its Harrison, Ohio, facility. Its business is both seasonal and cyclical, and the amount of work for its drivers is dependent on the orders to be delivered on any given day, a matter that cannot be predicted in advance or even at the beginning of the day. Drivers are called to work and assigned delivery runs on the basis of seniority. Drivers at the top of the seniority list can work as much as they want to, drivers in the middle essentially have part-time jobs, and drivers at the bottom of the list may be assigned only a limited number of driving assignments.

Harrison's drivers are represented by Truck Drivers, Chauffeurs and Helpers Local Union No. 100, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. They were covered by a collective bargaining agreement until it expired on February 28, 1983. The following day, March 1, 1983, the employees began an economic strike.

Nine employees crossed the picket line and fifteen new employees were hired by March 10, 1983, bringing Harrison up to its prestrike force of twenty-four drivers. The nine prior employees were given the top nine places on the seniority list, based on their old seniority. On March 14, 1983, the former employees involved in this dispute, James M. Weitz and Ricky D. Ramey, offered unconditionally to cross the picket line and return to work. No openings were then available, but three of the replacements left Harrison's employ five days later, creating additional openings. Weitz and Ramey were actually reemployed on March 25 and 30, respectively.

Although Weitz and Ramey were given their full seniority for all other purposes, on the driver seniority list they were placed below replacement drivers with prior experience and above replacement drivers with no prior experience. This put Weitz in the seventeenth slot and Ramey in the eighteenth. Prior to the strike Ramey was thirteenth and Weitz was fourteenth in seniority. Because more senior employees chose to remain on strike, they would have been in the third and fourth slots if given their full seniority. They have since moved up the list due to resignations and terminations, but they continue to be lower on the driver seniority list than all the employees who crossed the picket line and returned to work before them and lower than the replacement drivers who had prior cement truck driving experience.

Ramey and Weitz filed charges against Harrison with the National Labor Relations Board on April 11, 1983. The parties stipulated the facts and waived a hearing before an administrative law judge, and a panel of the Board considered the case. The panel, with one dissent, found Harrison guilty of an unfair labor practice under section 8(a)(1), (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), and ordered remedial action. *Harrison Ready Mix*

*Concrete,* 272 N.L.R.B. No. 47 (Sept. 26, 1984).

■ An employer is entitled to replace economic strikers, and it need not discharge permanent replacements to create places for returning strikers. *NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 345–46, 58 S.Ct. 904, 910–11, 82 L.Ed. 1381 (1938). Subject to that rule, economic strikers who make an unconditional offer to return to work must be reinstated, unless the employer can show legitimate and substantial business justifications for the failure to reinstate. *Rogers Manufacturing Co. v. NLRB,* 486 F.2d 644, 647–48 (6th Cir.1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 288 (1974); *NLRB v. Hartmann Luggage Co.,* 453 F.2d 178 (6th Cir.1971). The reinstated strikers must be given their full seniority, and super-seniority cannot be given to the replacement employees. *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). The question is whether this case is controlled by *Mackay* or *Erie Resistor.*

■ In the dissent to the Board's decision, it was stated that "where, as here, demotion on the roster is reassignment to a lesser, and therefore different, position with a cut in wages, the nice distinction between 'discharge' and unavailability of work offers is without substance." The Board majority, on the other hand, viewed "difficulties less severe than discharge" as not unduly burdensome to *Mackay* rights. The majority also held that, notwithstanding that Harrison's work distribution practices were the result of the seasonal and cyclical nature of its business, "[t]he nature of the Respondent's business does not excuse any denial of the Charging Parties' full reinstatement." This effectively held the failure to give Weitz and Ramey their claimed positions on the driver seniority list to be per se an unfair labor practice.

The employer in *Erie Resistor* offered replacement workers and strikers who crossed the picket line twenty years of additional seniority for credit against future layoffs. This offer was allegedly necessary for the employer to stay in business, but it was also such an effective weapon against the employees' right to strike that it broke the strike and caused a substantial number of resignations from the union. The Board made a detailed assessment of the discriminatory effects of such super-seniority, 373 U.S. at 230–31, 83 S.Ct. at 1146–47, and found it by its very terms to operate to discriminate between strikers and nonstrikers, both during and after a strike, and to have an undoubted destructive impact upon the strike and union activity. The Court held that in such a case, notwithstanding the alleged business necessity for super-seniority,

> intent is founded upon the inherently discriminatory or destructive nature of the conduct itself. The employer in such cases must be held to intend the very consequences which foreseeably and inescapably flow from his actions and if he fails to explain away, to justify or to characterize his actions as something different than they appear on their face, an unfair labor practice charge is made out.... [W]hatever the claimed overriding justification may be, it carries with it unavoidable consequences which the employer not only foresaw but which he must have intended.

*Id.* at 228, 83 S.Ct. at 1145.

In this case, the Board made no such detailed finding. Instead they characterized Harrison's conduct as "inherently destructive" in conclusory terms. There were no findings that Harrison intended or caused any discrimination between strikers and nonstrikers or any destructive impact upon the strike or union activity. Furthermore, the situation here is a novel one, not fitting squarely within the holding in *Erie Resistor*[1] and involving a serious claim

---

**1.** In *Belknap v. Hale,* 463 U.S. 491, 504 n. 8, 103 S.Ct. 3172, 3179 n. 8, 77 L.Ed.2d 798 (1983), the Supreme Court noted that *Erie Resistor Corp.* "involved an offer of superseniority to replace-

ments" and that the *Erie Resistor Corp.* "opinion was careful to distinguish cases not involving this element," citing among others, *Mackay.*

that the conduct was protected by *Mackay*. In such a novel situation as this, and in the absence of detailed findings and consideration, it was premature of the Board to characterize the employer's conduct as per se violative. Harrison's conduct must instead be analyzed to determine if it had a discriminatory intent.

We feel, on these facts, Harrison had no discriminatory intent. There is no evidence that Harrison used its policy as a threat against the union or as a weapon to get strikers to cross the picket line. If that were its object, it would be illogical to give lower places on the work list to strikers who did abandon the strike, as Ramey and Weitz did, while most striking employees were still on strike. Even more to the point, if Harrison really wanted to discriminate against Ramey and Weitz it did not have to take them back at all. Demand for ready mix concrete is not at its heaviest in March; Harrison could simply have contracted its work force, then waited a few months until demand justified the additional employees. Although Harrison's immediate need for Ramey and Weitz was marginal at best, it nevertheless had to begin immediate payment of benefits for them. In 1982, the benefits for the health and welfare fund and the pension fund alone totaled $90.50 per employee per week.

In short, Harrison had a legitimate business purpose, as in *Mackay*, for protecting the replacement employees' places on the work list, and its treatment of Ramey and Weitz was generous rather than discriminatory.

The petition of the National Labor Relations Board to enforce its order is denied.

---

*Laidlaw Corp.*, 171 N.L.R.B. 1366 (1968), *enf'd*, 414 F.2d 99 (7th Cir.1969), relied upon by petitioner, involved a more complex two separate strike situation, and the Board, mistakenly in our view as noted by the *Laidlaw* dissent, considered the *Mackay* decision overruled. Here also respondent hired the returning strikers back, unlike the situation in *Laidlaw*.