**AQUA–CHEM, INC., CLEAVER–
BROOKS DIVISION,
Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross–Petitioner.**

**Nos. 88–2191, 88–2475.**

United States Court of Appeals,
Seventh Circuit.

Jan. 8, 1991.

Julie Broido, N.L.R.B., Aileen A. Armstrong, Elliott Moore, Peter D. Winkler, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., George F. Squillacote, N.L.R.B., Region 30, Milwaukee, Wis., and Gerald P. Fleischut, N.L.R.B., Region 26, Memphis, Tenn., for N.L.R.B.

Thomas W. Mackenzie, Lindner & Marsack, Milwaukee, Wis., for Aqua–Chem, Inc., Cleaver–Brooks Div.

Before BAUER, Chief Judge, CUMMINGS, WOOD, Jr., CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION and KANNE, Circuit Judges.

## ON PETITION FOR REHEARING AND REHEARING EN BANC

On September 4, 1990, the petitioner filed a petition for rehearing with suggestion for rehearing en banc. An answer to the petition was requested and response was filed by the National Labor Relations Board on September 27, 1990. All of the judges on the original panel voted to deny a rehearing. A judge in regular active service requested a vote and the majority of the judges voted to deny a rehearing en banc. POSNER, COFFEY, FLAUM, EASTERBROOK and MANION, Circuit Judges, voted to grant rehearing. Accordingly, the petition for rehearing is hereby DENIED.

POSNER, Circuit Judge, with whom COFFEY, EASTERBROOK, and MANION, Circuit Judges, join, dissenting from the denial of rehearing en banc.

When workers go out on a strike not provoked by any unfair labor practices, the company is entitled to hire permanent replacements for the striking workers. *NLRB v. McKay Radio & Telegraph Co.,* 304 U.S. 333, 345–46, 58 S.Ct. 904, 910–11, 82 L.Ed. 1381 (1938). Although the company cannot offer these replacement workers unlimited seniority as an inducement to accept employment, *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963), it can promise them that if they are subsequently laid off the layoff will not create vacancies that the employer either can or must fill by recalling the strikers whom the replacement workers had replaced and who by definition will have greater seniority, having been hired earlier. Such a promise, we held in *Giddings & Lewis, Inc. v. NLRB,* 675 F.2d 926, 930–31 (7th Cir.1982), does not violate the National Labor Relations Act. The Eighth Circuit agrees, *Medallion Kitchens, Inc. v. NLRB,* 806 F.2d 185, 188 (8th Cir. 1986); *Randall v. NLRB,* 687 F.2d 1240, 1247 (8th Cir.1982) (dictum), and probably the Sixth as well, cf. *NLRB v. Harrison Ready Mix Concrete, Inc.,* 770 F.2d 78, 80 (6th Cir.1985); no circuit has registered disagreement. The employer in this case made such a promise. It promised that when a layoff ended, the company would recall workers not in order of seniority but in the reverse order in which they had been laid off, thus putting the replacement workers ahead of some former strikers having greater seniority.

*Giddings* had reversed the Labor Board. The Board did not react with gracious acquiescence. When this case came along, the Board held, contrary to *Giddings,* that the layoff of the replacement workers had created vacancies which the company was obliged to fill with strikers whom the replacement workers had replaced. The Board reasoned that the replacement workers who were laid off had no reasonable expectation of being recalled, though of course they *were* recalled—it was because

**404**

they were recalled ahead of strikers having greater seniority that the company was found to have engaged in an unfair labor practice. Because the replacement workers lacked such an expectation, the Board concluded, their interest in their jobs was less than that of the strikers. The panel accepted the Board's reasoning and distinguished *Giddings.* 910 F.2d 1487 (7th Cir. 1990).

*Giddings* allows an employer to offer replacement workers a contract that will put them ahead of the strikers they have replaced in the event that there is a layoff. Such a contract was made here. The Board and the panel have forced the employer to break it. For there is no ambiguity about what the contract provides. The panel acknowledges that the permanent replacements had "a contractual right to recall" in the event of a layoff. *Id.* at 1490. They were laid off, and pursuant to the contract they were recalled in reverse order of layoff. The Board and the panel hold that in honoring its contract with the replacement workers the employer violated the National Labor Relations Act. Yet it was a lawful contract; *Giddings* so held, and the panel does not question *Giddings'* soundness.

This case and *Giddings* cannot stand; and *Giddings* is the sounder decision, as well as one with support in other circuits. A permanent replacement is in fact temporary if in the next economic downturn his recall rights will be pushed below that of every former striker. The replacement worker is a second-rate citizen in another sense, under the approach of the Board and the panel; the employer is not required to respect—indeed, is forced to flout—the rights that the collective bargaining agreement confers on the replacement. The employer is forced to do this even though they are lawful rights. The panel does not question the propriety of conferring on permanent replacements the contractual right to recall in the event of layoff. But what it gives with one hand it takes away with the other by holding that the Board can balance the interests of the replacement workers and of the strikers and if the balance inclines in favor of the latter can deem the contractual right an unfair labor practice.

Even if the result were correct, the method of reaching it would be awful. It depends on a balancing test the outcome of which cannot be known in advance and which therefore leaves at sea both the employer, who cannot know what offers it can make to permanent replacements, and the replacement worker themselves, who cannot know what offers made to them are valid.

The role of the replacement worker is fundamental in contemporary labor relations. The panel's decision muddies that role, unsettles the law, buries the rights of management and labor alike in uncertainty and confusion. We should rehear the case en banc.